UNITED STATES DISTRICT COURT        <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
KEVIN JACKSON,                       :

                              :

                    Petitioner,    :

                              :        MEMORANDUM
        - against -              :        <u>AND ORDER   </u>

                              :
DANIEL A. SENKOWSKI,         :        03 CV 1965 (JG)

                              :

                    Respondent.  :
---------------------------------------------------------------- X

A P P E A R A N C E S :

       RUTH M. LIEBESMAN
           67 Wall Street, Suite 2200
           New York, NY 10005
           Attorney for Petitioner

       RICHARD A. BROWN
           District Attorney
           Queens County
           125-01 Queens Boulevard
           Kew Gardens, NY 11415
       By:   Ranjana Piplani
           Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Kevin Jackson, a prisoner in the custody of the Clinton Correctional Facility

pursuant to a judgment of the New York State Supreme Court, Queens County, petitions for a

writ of habeas corpus under 28 U.S.C. § 2254.  Jackson submitted his petition *pro se*, and his

counsel has submitted a supplemental brief.  Jackson challenges his conviction by a jury of two

counts of murder in the second degree, in violation of N.Y. Penal Law § 125.25(1), and two

counts of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law

§ 265.03(2).

        Jackson asks for habeas relief on the following grounds: (1) the trial court

erroneously precluded certain testimony; (2) the trial court failed to give a missing witness

charge as to two witnesses; (3) the trial court limited defense counsel's comments in summation

about a missing witness; (4) the trial court restricted certain lines of questioning by defense

counsel on cross-examination; (5) the trial court erroneously admitted certain out-of-court

statements by David Harrison identifying Jackson as the killer of Richard Harrison; (6) the trial

court erroneously precluded Jackson from impeaching those out-of-court statements; (7) the

prosecution failed to disclose certain *Brady* information; (8) the prosecutor committed

misconduct in summation; (9) there was insufficient evidence on which to convict Jackson of the

murder of Earl Hicks; (10) the assistance of Jackson's trial counsel was constitutionally

ineffective; and (11) the assistance of Jackson's appellate counsel was constitutionally

ineffective.  For the reasons set forth below, the petition is denied.

## BACKGROUND

A.      *The Trial*

      1.      <u>The Murder of Richard Harrison</u>

The prosecution's evidence at trial established that on November 1, 1989 at

almost ten o'clock in the morning, Jackson shot Richard Harrison several times, killing him.

Jackson fled the scene in a car.  Christopher Lloyd, after hearing the shots, left his home and saw

Harrison on the ground.  He also saw Louise Thomas, a passer-by, administering first aid to

Harrison.

These facts were established in part through David Harrison, the victim's brother,

who testified that he heard three gunshots and then heard Lloyd say, "I don't believe it.  I can't

believe it.  He just shot Rich . . . .  Kevin Jackson just shot Rich."  R. 551-52.  David Harrison

then saw his brother's body in the street, and called 911. David Harrison also testified that Lloyd said the vehicle he saw leaving the scene of Richard Harrison's murder was "[a] gray Jetta, four-door, [with] tinted windows and Illinois plates." R. 646.

The prosecution also introduced the tape of a 911 call by Lloyd, in which Lloyd identified Jackson as Richard Harrison's killer. Lloyd did not testify at trial, and the trial court precluded Jackson from offering certain statements by Lloyd to Detective Gerald Shisco to impeach Lloyd's statements on the 911 tape. In addition, Rolf Sylver testified that Jackson admitted to him that he had killed Richard Harrison, that Lloyd had witnessed the murder, and that Jackson was paying Lloyd to remain silent about the murder.

Edmond Kalbfleish, a supervisor at a construction site for Banta Homes, testified that Jackson requested his name be put in the site's log book as an indication that he performed work at the site on November 1, 1989 from 7:30 a.m. until 3:30 p.m. According to Kalbfleish, Jackson did not actually work during that time, but Kalbfleish added his name to the log book anyway.

2.      The Murder of Earl Hicks

The prosecution's evidence also established that on October 23, 1991, Jackson argued and physically fought with a business competitor, Earl Hicks. Two days later, at Jackson's direction, Jackson's employee, "Little Just," shot and killed Hicks. Jackson was in a business meeting during the shooting. Sylver testified that, while leaving that meeting, Jackson told him he had directed Little Just to kill Hicks, and that Jackson had arranged the business meeting to create an alibi. (Another prosecution witness, Albert DiGiantomasso, testified that he had set up the October 25, 1991 meeting.) Sylver also testified that Jackson received two pages,

one during the meeting and one afterward. According to Sylver, Jackson remarked that the first page indicated that Little Just had shot Hicks, and the second page meant Little Just had gotten away safely. Sylver did not remember exactly when the second page occurred, but testified that it occurred either while he and Jackson were leaving the meeting, while they were driving back to Jackson's office, or while they were eating at a restaurant. Sylver also testified that Jackson said he had instructed Little Just to kill Hicks in exchange for Jackson's car.

        3.    <u>The Defense's Case</u>

An employee for the New York State Department of Motor Vehicles ("DMV"), the only witness called by the defense at trial, testified that on August 1, 1989 Jackson had registered his grey four-door Volkswagen in New York.

        4.    <u>The Verdict and Sentence</u>

As mentioned above, the jury found Jackson guilty of two counts of murder in the second degree and two counts of criminal possession of a weapon in the second degree. The trial court sentenced Jackson to consecutive indeterminate prison terms of 25 years to life for the murder of Richard Harrison and 20 years to life for the murder of Earl Hicks. The court also sentenced Jackson to concurrent indeterminate prison terms of seven to 14 years for the weapon-possession counts.

B.    *Subsequent Proceedings*

Jackson filed a timely appeal of his convictions to the Appellate Division, Second Department, and raised nine grounds for relief: (1) the trial court improperly refused to issue a material witness order compelling Detective Shisco, who had since retired, to testify; (2) the trial court improperly refused to give a missing witness charge as to Lloyd and Shisco; (3) the

prosecution improperly vouched for its witnesses during summation and improperly appealed to the jury's emotions; (4) the trial court prohibited Jackson from commenting during summation on the prosecution's failure to call certain witnesses; (5) the trial court improperly allowed Lloyd's 911 call into evidence as an excited utterance; (6) the trial court wrongfully denied the Jackson the opportunity to present favorable evidence; (7) the prosecution failed to disclose *Brady* and *Rosario* information; (8) the restrictions placed on defense counsel by the trial court rendered counsel's performance ineffective; and (9) there was insufficient evidence to support Jackson's conviction of the murder of Hicks.

Jackson's *pro se* supplemental brief raised the following claims: (1) the trial court violated Jackson's Confrontation Clause rights by improperly precluding him from introducing into evidence a police report and a taped interview of Lloyd to impeach Lloyd's statement to the 911 operator that he saw Jackson shoot Richard Harrison; (2) the prosecution committed *Brady* and *Rosario* violations when it failed to disclose the information -- allegedly contained in Jackson's pre-sentence report -- that Lloyd saw "a Rasti" shoot Harrison; (3) the trial court interfered with defense counsel's summation by precluding him from commenting on the absence of certain witnesses; and (4) there was insufficient evidence to establish that Jackson acted in concert with the shooter of Hicks.

On October 9, 2001, the Appellate Division affirmed the convictions. It specifically rejected the claims as to Shisco, finding that the claimed error in failing to issue a material witness order was unpreserved and the jury charge issue was without merit. The court held that the "remaining contentions, including those raised in [Jackson's] supplemental *pro se* brief" were either unpreserved or without merit. *People v. Jackson*, 731 N.Y.S.2d 393 (2d Dep't

2001).  The New York State Court of Appeals denied leave to appeal on January 22, 2002.

*People v. Jackson*, 97 N.Y.2d 705 (2002).

On April 7, 2003, Jackson filed his original petition with this Court.  On June 3, 2003, he moved to stay the petition so he could exhaust certain claims.  I granted that motion on June 4, 2003.

On June 15, 2003, Jackson petitioned the state court for a writ of error coram nobis on the ground that he was denied the effective assistance of appellate counsel. Specifically, Jackson claimed that counsel failed to argue that the trial court violated the Confrontation Clause and committed reversible error when it admitted, through David Harrison, Lloyd's statement that Jackson shot Richard Harrison, and when it allowed the prosecution to play the tape containing Lloyd's similar statement to the 911 operator.  The Appellate Division denied Jackson's application on October 6, 2003.  *People v. Jackson*, 765 N.Y.S.2d 280 (2d Dep't 2003).  The Court of Appeals denied leave to appeal on December 29, 2003.  *People v. Jackson*, 1 N.Y.3d 574 (2003).

On January 13, 2004, Jackson filed a motion pursuant to N.Y. Crim. Proc. § 440.10 to vacate the trial court's judgment on the following grounds, among others: (1) the admission of Lloyd's statements to David Harrison and the 911 operator violated Jackson's rights under the Confrontation Clause; (2) Jackson's pre-trial counsel was ineffective because he (a) failed to inform Jackson about a pre-trial plea offer, (b) failed to give Jackson advice about plea negotiations, (c) did not explain potential sentencing possibilities to Jackson, and (d) had a conflict of interest with Jackson during his representation; and (3) Jackson's trial counsel was ineffective because he (a) failed to follow through on the defense promised at the beginning of

the case, (b) failed to object to the introduction of the 911 tape containing Lloyd's statement, and (c) did not interview several potential defense witnesses.  On June 30, 2006, the New York State Supreme Court denied Jackson's motion to vacate judgment, *People v. Jackson*, 824 N.Y.S.2d 765 (N.Y. Sup. Ct. 2006) (unpublished table opinion), and on November 6, 2006 the Appellate Division denied Jackson's motion for leave to appeal that decision.  *People v. Jackson*, No. 2006-08596 (2d Dep't Nov. 6, 2006) (Rivera, J.).

DISCUSSION

A.    *The Standard of Review*

      1.    <u>Deference to State Courts' Decisions on the Merits</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits.  *See* 28 U.S.C. § 2254(d).  Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[1]  28 U.S.C. § 2254(d)(1).  The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the

---

[1]    Habeas relief is also warranted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. § 2254(d)(2).  That subsection is not relevant here.

Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on

the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

2.    The Exhaustion Requirement

Before a federal court may consider a state prisoner's petition for a writ of habeas corpus, the petitioner must have exhausted all available state judicial remedies. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order to exhaust his state remedies, a petitioner must have "fairly presented" his federal constitutional claims to the highest state court. *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). A petitioner has fairly presented a claim if he or she apprised the state courts of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Id.* Even if a petitioner raises precisely the same legal claims in state and federal proceedings, reliance in the two proceedings upon different factual grounds that fundamentally alter the legal claim will foreclose a conclusion that the claim is exhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003), *cert denied.*, 540 U.S. 1046 (2003) ("A petitioner has 'fairly presented' his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." (internal quotation marks omitted)). In other words, the claim presented to the state court "must be the substantial equivalent of the claim raised in the federal habeas petition." *Id.* at 295 (internal quotation marks omitted). Furthermore, "the basic requirement remains that 'the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature.'" *Jones v. Vacco*, 126 F.3d 408,

413 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 192).

       3.       The Consequences of Procedural Default in State Court

       In *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991), the Supreme Court reasoned that, like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of the first opportunity to correct constitutional errors. Nevertheless, when a habeas petitioner no longer has any state remedies available to him (*i.e.*, when a petitioner has defaulted his federal claim in state court), such claims are deemed exhausted even though the state courts have had no opportunity to previously consider them. A federal court need not require that a federal claim be presented to a state court if the state court would hold the claim to be procedurally barred. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)).

       Because a state procedural bar represents an adequate and independent state ground for deciding the claim against the petitioner, however, a federal habeas court may review a procedurally barred claim on the merits only if the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

       A defaulted claim will be considered by the court upon a showing of cause and prejudice. *See id.*; *Teague v. Lane*, 489 U.S. 288, 298-299 (1989). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). To satisfy

the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *Amadeo v. Zant*, 486 U.S. 214, 222 (1988). If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To succeed on such basis it is necessary for petitioner to make a colorable showing of factual innocence. *Id.* at 495.

B.      *The Trial Court's Restrictions on the Defense Case*

Jackson advances four claims that the trial court imposed unconstitutional limitations on the presentation of his case. I conclude that none of them establishes a ground for federal habeas relief.

1.      The Preclusion of Testimony as to Shisco

Jackson argues that the "[t]rial court refused petitioner the calling of certain witnesses [o]n his behalf." Pet. 5. In particular, Jackson maintains that "although petitioner subpoenaed a Detective Shisco, the court denied petitioner's request that it enforce said subpoena." *Id.* He also claims the trial court refused his application "to call another witness who[] would have testified to the efforts put forth in securing Detective Shisco's presence in trial." *Id.* I conclude that neither claim establishes a constitutional violation.

The claim as to the court's refusal to enforce the subpoena of Shisco is procedurally barred. First, the claim advanced here is not the claim presented to the state court. Jackson argued on direct appeal that the trial court erred in not enforcing the subpoena on its own initiative; he did not claim he had applied for enforcement of the subpoena. *See People v. Jackson*, 731 N.Y.S.2d 393 (2d Dep't 2001) (Jackson "never requested such an order"). Here, he

11

contends that he asked for such an order and it was denied. This claim is therefore unexhausted, but if Jackson were to try to exhaust it now the state court would deny the application as waived because the claim is based on a matter within the trial court record. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). As exhaustion would be futile, the claim is now procedurally defaulted. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). Jackson does not argue any cause for or prejudice from his default, and a miscarriage of justice will not result if its review is barred here. I therefore may not review the claim.

Second, even if I were to construe this claim as the same one raised on direct review, *i.e.*, that the court refused to enforce *sua sponte* the Shisco subpoena, it would be procedurally defaulted. The Appellate Division explicitly held that Jackson "failed to preserve this claim for appellate review because he never requested such an order." 731 N.Y.S. 2d at 393 (citing N.Y. Crim. Proc. Law § 470.05(2)). Jackson does not contend otherwise. Because the preservation rule is an independent and adequate state ground for deciding the claim, *see Rosenfeld v. Dunham*, 820 F.2d 52, 54 (2d Cir. 1987), *cert. denied*, 484 U.S. 968 (1987), and, as discussed above, Jackson's petition raises no argument as to cause for the default or prejudice therefrom, much less that he is actually innocent of the crime charged, this claim, too, must be rejected as procedurally defaulted.[2]

Jackson's claim that the trial court violated his constitutional rights by excluding testimony about the efforts to secure Shisco as a witness is without merit. Erroneously excluded evidence warrants habeas relief only if the omission deprived the petitioner of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). This is determined by examining whether

---

[2]    In any event, the claim lacks substantive merit, because a trial court has no authority to compel a material witness to testify absent an application from a party. *See* N.Y. Crim. Proc. Law § 620.30(1).

the excluded evidence would have created "a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112 (1976). While "Supreme Court precedent makes clear that a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense," the right of a criminal defendant "to present relevant evidence is not . . . unlimited; rather it is subject to 'reasonable restrictions.'" *Wade v. Mantello*, 333 F.3d 51, 57-58 (2d Cir. 2003) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). Accordingly, while the ultimate test is whether the evidentiary ruling was material to the question of reasonable doubt, "that inquiry may be premature if the trial court's ruling was proper." *Id.* at 59.

Here, there was no violation because the exclusion of the testimony was proper. The trial court determined that the proposed testimony about the defense team's efforts to locate Shisco was irrelevant. *See* R. 1370-74.[3] I agree. The testimony was offered to prove only that the defense team had subpoenaed Shisco, so the jury would charge any deficiency in the evidence he might have provided to the prosecution's account, not the defendant's. R. 1369 ("I intend to argue this was a[] missing witness, that if he was here, they might know certain things that they don't know now and they can't hold the defense to, they have to hold the prosecution to it."). But the trial court had already correctly precluded the testimony of Shisco, concluding that he could offer no other statements by Lloyd that would be inconsistent with Lloyd's statements that were introduced at trial through the 911 tape and David Harrison. This ruling was correct. Jackson had proposed to impeach Lloyd's statement that Jackson shot Richard Harrison with Lloyd's statement to Shisco soon after the shooting that Lloyd had heard two shots, ran outside, and had seen a grey Volkswagen Jetta, which Lloyd recognized as Jackon's car, leaving the

_____

[3] The Appellate Division affirmed this determination on the merits, holding that Jackson failed to make a prima facie showing that Shisco could provide material testimony. *See* 731 N.Y.S.2d at 393.

scene. *See* R. 1355-56. Jackson had also offered certain reports by Shisco that did not include a description of the perpetrator of the Harrison shooting. *See id.* The trial court correctly determined that those proffered statements were not inconsistent with Lloyd's identification of Jackson as the shooter. R. 1361-62. The proffered statements merely omitted Lloyd's explicit conclusion in that regard; they did not assert or imply that Lloyd did not know (or see) who the perpetrator was. *See People v. Epps*, 594 N.Y.S.2d 15, 16-17 (1st Dep't 1993) (prior statement's omission of later statement's assertion of fact does not render prior statement inconsistent); *see also People v. Mills*, 817 N.Y.S.2d 273, 274-75 (1st Dep't 2006). I therefore conclude that the preclusion of Shisco's testimony as irrelevant was proper.

Since Shisco's testimony was irrelevant, testimony about the attempts to locate Shisco was likewise irrelevant.[4] The trial court's exclusion of this testimony was therefore proper, and thus constitutional. Accordingly, even without the deference I must accord the state courts under AEDPA, the trial court's ruling did not make Jackson's trial fundamentally unfair.[5]

2.    The Refusal of a Missing Witness Charge as to Shisco and Lloyd

Jackson argues that the trial court unconstitutionally refused his request to give the jury a missing witness charge as to Shisco and Lloyd, whose "testimonies would have in all probability exonerated petitioner of the charges." Pet. 5. The Appellate Division denied this

---

[4]    I do not mean to suggest that it would have been error to preclude testimony about efforts to procure Shisco's testimony if he had relevant, admissible testimony. Such efforts might have a bearing on a defendant's entitlement to a particular missing witness instruction, but they are generally unlikely to be appropriate topics for presentation to a jury.

[5]    Because I conclude that the trial court correctly found Shisco's proffered testimony would not impeach Lloyd's statements identifying Jackson as the shooter of Richard Harrison, I deny Jackson's claim that the trial court unconstitutionally excluded Shisco's testimony. Jackson also claims that the trial court rejected counsel's attempt to introduce statements by Lloyd to an assistant district attorney. This too is denied, because the record does not reflect counsel ever made such a proffer.

14

claim on its merits, ruling with respect to Shisco that "[t]he defendant failed to make a prima facie showing that this detective was knowledgeable about a material issue in the case," and with respect to Lloyd that the claim was "either unpreserved for appellate review or without merit." 731 N.Y.S.2d at 393 (citations omitted).[6] This was not an unreasonable application of Supreme Court law.

The decision whether to give a missing witness charge is committed to the sound discretion of the trial court. *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992) (citing *United States v. Torres*, 845 F.2d 1165, 1170-71 (2d Cir. 1988)). The failure to give such a charge "will rarely support reversal or habeas relief since reviewing courts recognize "the 'aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than any reviewing court." *Malik v. Kelly*, No. 97-CV-4543 (RR), 1999 WL 390604, at *7 (E.D.N.Y. Apr. 6, 1999) (quoting *Torres*, 845 F.2d at 1171) (some internal quotation marks omitted).

As I have explained, the proffered testimony of Shisco was not material in Jackson's case. Accordingly, Jackson did not sustain his burden to show he was entitled to a missing witness charge as to Shisco. *See People v. Kitching*, 78 N.Y.2d 532, 536-37 (1991) (party requesting missing witness charge must show, among other things, missing witness's material knowledge). The Appellate Division's decision affirming the rejection of a missing witness charge about Shisco was therefore not improper, much less an unreasonable application of federal law.

Furthermore, Jackson is wrong in asserting that the proffered impeachment of

---

[6]    The latter decision by the Appellate Division was a decision on the merits for habeas review purposes. *See Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 976 (2007).

Lloyd's statements identifying Jackson as the killer of Richard Harrison would have "in all probability" vindicated Jackson. The impeaching effect of the evidence would have been minimal, and there was powerful independent evidence from which the jury could have convicted Jackson of the murder. According to Sylver's testimony, for instance, Jackson admitted that Lloyd saw him murder Harrison, and Jackson paid Lloyd to keep quiet about the murder. And Jackson asked Kalbfleisch to generate a false alibi for him for the date and time of the murder. Notably, Jackson does not challenge this evidence in any of the many claims in his petition.[7] With such evidence in front of it, it cannot reasonably be said that the jury would "in all probability" have returned a verdict of not guilty.[8]

3. The Limitation of Defense Counsel's Comments in Summation About Lloyd

Jackson argues that the trial court unconstitutionally precluded his counsel from commenting in summation on the fact that Lloyd was a missing witness. Counsel repeatedly tried to refer to Lloyd's absence. The court repeatedly sustained objections to the references on the ground that they improperly called for the jury to speculate about why Lloyd was not called to testify. *See* R. 1400-03. The Appellate Division rejected Jackson's claim of error. *See* 731 N.Y.S.2d at 393. I conclude that this was not an unreasonable application of federal law.

Though a trial court of course cannot prohibit defense counsel from making a

---

[7] Sylver testified at trial that Henry Tyler was the conduit of Jackson's payments to Lloyd. Jackson's counsel confidently represented at oral argument that Sylver never testified to that effect. Tr. June 15, 2007 at 36. That representation is flatly contradicted by the record. *Id.* at 37-38 (referring to R. 707-08).

[8] In addition, the ruling that Jackson was not entitled to a missing witness charge as to Lloyd does not appear to have been erroneous as a matter of state law. Jackson argues that Lloyd's testimony would have "in all probability have exonerated" him. This claim, however, concedes that Lloyd's testimony would have been favorable to Jackson, not the prosecution. Accordingly, the trial court's rejection of the charge was correct, because Jackson did not show that Lloyd could "be expected to testify favorably to the opposing party." *People v. Gonzalez*, 68 N.Y.2d 424, 427 (1986).

summation entirely, *see Herring v. New York*, 422 U.S. 853, 863 (1975), reasonable restrictions

on summation are within the court's discretion. *See United States v. Bautista*, 252 F.3d 141, 145

(2d Cir. 2001) (per curiam). In particular, the Second Circuit has affirmed the preclusion of

comments that would tend to "confuse the jury by implicating facts about which the jury heard

no testimony." *Id.* Here, counsel was permitted to argue that the absence of testimony from

Lloyd resulted in a lack of evidence as to guilt. R. 1436 ("Where was Chris Lloyd when the

shots were fired? You have no evidence."); *see also* R. 1404. But it is a different matter

altogether to invite speculation about the reasons for Lloyd's absence from trial. The distinction

was critical in this case, as there was evidence that Jackson himself had *procured* Lloyd's

unavailability at trial by paying him to stay away.[9] Since there was no evidence to support the

contrary inference defense counsel repeatedly suggested (*i.e.*, that Lloyd's absence indicated he

would have exonerated Jackson), the state court's rejection of Jackson's claim was not an

unreasonable application of federal law.

      4.    <u>Restrictions on Questioning of the DMV Witness</u>

          According to Jackson's *pro se* petition, the trial court "prohibited counsel from

engaging in certain lines of questioning." Pet. 5A. I construe this claim to be the one raised in

Jackson's counseled brief on direct appeal: that "the court improperly precluded [him] from

asking the DMV witness about the circumstances as to [Jackson's] changing his license plate

number in January 1990." Brief for Defendant-Appellant 32. Jackson sought to show that he

had switched his number due to a lapse in his insurance policy, to dispel the jury's possible

---

[9]    Sylver testified at trial that Jackson said he had paid Henry Tyler to keep Lloyd quiet. R. 707. Indeed, though the matter is not necessary to any resolution of this petition, it appears to me from the trial record that Jackson has forfeited any Confrontation Clause challenge to Lloyd's out-of-court statements by rendering Lloyd unavailable.

suspicion that changing his license plate number implied "nefarious conduct." *Id.* I conclude that the preclusion of this testimony was not an unreasonable application of federal law.

The trial court permitted Jackson to elicit from the DMV witness that he had registered a Volkswagen as of August 31, 1989 and received New York license plates. This testimony was relevant to rebut Sylver's testimony that Jackson drove a Volkswagen Jetta with Illinois license plates, which Lloyd's hearsay statements indicated was the car fleeing the scene of Richard Harrison's shooting on November 1, 1989. However, the trial court precluded testimony that Jackson changed his plates in 1990, after the shooting, on the ground that Jackson's use of the car after the shooting was not relevant. This ruling was correct, and Jackson makes no persuasive argument to the contrary. He insists that the 1990 switch of the plates was not "nefarious," and that may well be true, but it has no bearing on what plates were on the Volkswagen on November 1, 1989. The state court's ruling was, therefore, not error. At the very least, the state court's conclusion was not an unreasonable application of clearly established federal law.

C.     *The Admission of Lloyd's Out-of-Court Statements That Jackson Shot Harrison*

Jackson argues that the trial court wrongly permitted the prosecution to introduce as an excited utterance the 911 tape of Lloyd's statement identifying Jackson as the killer of Richard Harrison. This claim has no merit. Erroneous evidentiary rulings by a state trial court generally do not rise to the level of due process violations upon which a federal court may grant habeas relief. *See Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (citing, *inter alia*, *Lipinski v. New York*, 557 F.2d 289, 292 (2d Cir. 1977)). The test for such a due process violation is difficult to pass: the admitted evidence must be "so extremely unfair that its

18

admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation," so the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)).

Jackson cannot establish that the admission of the 911 tape violated his rights under the Due Process Clause. First, the tape was properly admitted. I have listened to it and examined its evidentiary context at trial. Lloyd's statements on it were quintessential excited utterances, made to the police to summon help for a mortally wounded man. They qualified for an exception to the hearsay rule, *cf.* Fed. R. Evid. 803(2), and did not implicate the Confrontation Clause. *See Davis v. Washington*, 126 S. Ct. 2266, 2276 (2006) (statements in response to questions by 911 operator generally do not implicate the Confrontation Clause because they are not "testimonial").

Second, as I have noted, there was substantial independent evidence from which a jury could have convicted Jackson. There was the testimony of Sylver and Kalbfleisch, for instance. But even putting that evidence aside, the 911 tape was not the only source of Lloyd's identification of Jackson as the killer: that statement was also elicited through David Harrison. Accordingly, the introduction of the 911 tape did not itself provide the basis for the jury's

conviction.

I therefore cannot conclude that the state court's rejection of Jackson's challenge to the admission of Lloyd's statements to the 911 operator was an unreasonable application of federal law.

D.    *The Prosecution's Alleged Nondisclosure of Evidence Impeaching Lloyd's Out-of-Court Statements*

Jackson argues, both in his *pro se* petition and in his counseled brief, that the prosecution violated the disclosure principle established in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to disclose a statement by Lloyd to a "Police Officer Schwartz" that "[Lloyd] had seen 'a Rasti' lean out the window of the car . . . at the scene of Harrison's murder, with a gun in his hand[,] and fire shots at Richard Harrison." Pet'r Br. 44. Jackson claims that this statement by Lloyd was never disclosed to the defense until it appeared in Jackson's pre-sentence report.

Even were I to conclude that this claim had been preserved for my review,[10] I would not hold that it establishes a *Brady* violation. The principal defect of Jackson's argument is that he never mentions precisely what the undisclosed statement was. His brief quotes only two words from a pre-sentence report ("a Rasti"), and the pre-sentence report appears nowhere in counsel's voluminous submissions. During oral argument, I asked Jackson's counsel what the claimed *Brady* information was. Tr. June 15, 2007 at 30. Counsel directed me to "[t]he record before the state court," *id.* at 31, but the state court record only contains a paraphrase of the contents of the probation report. *See* Tr. June 3, 1997 at 14-15. Without knowing what the

_____

[10]     The question is a close one. Jackson's *pro se* brief on direct appeal argued that his trial counsel had been rendered constitutionally ineffective by the late disclosure of this alleged statement by Lloyd.

actual statement at issue is, I cannot grant Jackson habeas relief based upon it.

In addition, while impeachment information is sufficiently "favorable to an accused" to warrant disclosure under *Brady*, *see Giglio v. United States*, 405 U.S. 150, 154-55 (1972), including impeachment information relating to a hearsay declarant, *see United States v. Jackson*, 345 F.3d 59, 70-71 (2d Cir. 2003), *cert. denied*, 541 U.S. 956 (2004), Jackson does not demonstrate that the Lloyd statement was "material" information. *See Agurs*, 427 U.S. at 108 (disclosure obligation extends only to material information). Specifically, Jackson does not establish that the pre-sentence report statement contradicted Lloyd's hearsay statements. Counsel assures me that Jackson has never been a Rastafarian, but offers no support for that claim, and certainly does not demonstrate that the prosecution knew before and during trial that Jackson had never been a Rastafarian. Accordingly, counsel does not establish that "the prosecution knew, or should have known," that the alleged hearsay statements were potentially false. *Id.* at 103-04. Moreover, as I have explained, the hearsay statements were not "the only evidence linking the defendant to the crime," so information impeaching those statements was not unambiguously material. *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998) (undisclosed impeachment evidence "may be considered to be material where the witness in question supplied the only evidence linking the defendant to the crime"). Accordingly, the state court was not unreasonable in concluding that the failure to disclose the pre-sentence report statement was not a *Brady* violation.

E.      *The Prosecution's Comments in Summation*

Jackson claims he was deprived of his rights under the Due Process Clause of the Fourteenth Amendment because the prosecutor made "inappropriate comments during

summation." According to Jackson, the prosecution "continuously vouched for the testimony of Rolf Sylver" and "unjustly appealed to the jury's emotions" by telling the jury their duty could only be fulfilled by returning a guilty verdict. Pet. 6.

Prosecutors may not personally vouch for the credibility of witnesses or the truth of the government's evidence. *See United States v. Miller*, 116 F.3d 641, 683 (2d Cir. 1997), *cert. denied*, 524 U.S. 905 (1998). The reason for this is that the prosecutor represents the government, so jurors might find it difficult to ignore the prosecutor's opinion, however biased or baseless it may be. *United States v. Modica*, 663 F.2d 1173, 1178-79 (2d Cir. 1981), *cert. denied*, 456 U.S. 989 (1982). A prosecutor's professed opinion may thus divert the jury from deciding the case based on the evidence. *See Floyd v. Meachum*, 907 F.2d 347, 354 (2d Cir. 1990). In addition, a prosecutor must avoid arguments that urge the jury to decide the case based on emotion or prejudice. *See, e.g.*, *United States v. Castillo*, 924 F.2d 1227, 1234 (2d Cir. 1991).

"It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992) (internal quotation marks omitted), *cert. denied*, 506 U.S. 847 (1992). For a petitioner to establish a constitutional error on the basis of prosecutorial misconduct, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The three-part test adopted by the Second Circuit to determine whether a prosecutor's improper argument deprived the defendant of a fair trial requires the court to consider: "(1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome." *United States v. Forlorma*, 94 F.3d 91, 95 (2d Cir. 1996). The first factor looks both to whether the misconduct

was intentional and whether the misstatements were pervasive or were "minor aberrations in a prolonged trial." *Modica*, 663 F.2d at 1181. For the second factor, a district court's curative instructions or sustaining of a defense objection lessens any prejudice. *Id.* at 1181-82. The third factor considers the likelihood of conviction absent the misconduct. *Compare, e.g.*, *Forlorma*, 94 F.3d at 96 (reversible error where misstatements went to the only contested issue at trial), *with Modica*, 663 F.2d at 1181-82 (improper remarks were found to be harmless where the government's case was overwhelming).

Jackson alleges prosecutorial misconduct here in the form of improper vouching by the prosecutor in his summation. But there was no such vouching. My review of the record reveals that the prosecutor did not once personally vouch for the testimony or character of Rolf Sylver. To be sure, counsel stated that, for example, Sylver "did not exaggerate" during his testimony. R. 1468. But this is not improper vouching -- counsel was merely arguing his case. And the prosecutor's comment comparing defense counsel's cross-examination of Sylver to a boxing match was well within the permissible bounds of rhetoric; there was nothing offensive or improper about the analogy.

Jackson also claims the prosecution unfairly appealed to the jury's emotions. Jackson fails to mention which specific portions of the summation suffered from such a defect, however, and my review of the record turns up no such appeals. In the state court proceedings, Jackson argue that the prosecutor told the jury in his summation "the jury ha[s] to stop the defendant and have the courage to vote guilty." Brief for Defendant-Appellant 42. Such a remark might have been inappropriate, but the point is moot because the prosecutor did not make it. He merely told the members of the jury to "have the courage to keep [their] eyes focused and

render [their] verdict on the evidence and the law free of bias, free of prejudice, free of sympathy." R. 1514. The prosecutor's *actual* statement to the jury was not at all improper -- at most, it instructed the jury to look at the evidence and law in making its decision.

Jackson also maintains that the following statement was improper: "I submit to you the only verdict which is reasonable and logical is that this defendant is guilty of the death of Earl Hicks and the death of Richard Harrison." R. 1517. I disagree, and find the contention to be frivolous. The argument did not urge the jury to decide the case based on emotion or prejudice; it explicitly urged the jury to find the defendant guilty based on reason and logic. Finally, Jackson challenges the following statements: "[Jackson] received a fair trial under our constitution. Because he has rights. Earl Hicks also had rights. Rights. Richard Harrison had rights [under] the constitution. Protected the right [*sic*] to life and liberty." R. 1486. Those statements should not have been made, but an objection to them was sustained. *See id.* There was, therefore, insufficient prejudice to Jackson to warrant habeas relief.

In sum, the state court's rejection of Jackson's claims of procedural misconduct was not an unreasonable application of federal law.

F.      *The Sufficiency of the Evidence Supporting the Conviction as to Earl Hicks*

Jackson challenges the sufficiency of the evidence supporting his convictions arising out of the murder of Earl Hicks. Jackson is entitled to habeas relief on this claim only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In considering the sufficiency of the evidence, I may not "weigh . . . competing inferences and explanations" to determine "which explanation is more

likely." *United States v. Friedman*, 998 F.2d 53, 56 (2d Cir. 1993) (internal quotation marks omitted). In particular, I "will not disturb the jury's findings with respect to the witnesses' credibility." *United States v. Roman*, 870 F.2d 65, 71 (2d. Cir. 1989), *cert. denied*, 490 U.S. 1109 (1989). A lack of corroboration for a witness's testimony does not make that testimony insufficient, *see id.*, and as a federal matter a defendant may properly be convicted on the uncorroborated testimony of a single witness, *see United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997), "so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993).

Here, viewed in the light most favorable to the prosecution, the evidence was plenty sufficient to prove that Jackson acted in concert with Little Just to murder Earl Hicks. Sylver testified that Jackson told him about hiring Little Just to kill Hicks. Sylver also explained how the beeps received by Jackson on his pager were explained by Jackson as updates about the murder, and that Jackson stated that he had arranged his own alibi. Jackson's arguments that Sylver's testimony was inconsistent are of no moment. When viewed in the light most favorable to the prosecution, the testimony was sufficient for a rational jury to have found Jackson guilty of acting in concert with Little Just to murder Hicks. *See* N.Y. Penal Law § 20.00.

G.      *The Assistance of Trial and Appellate Counsel*

Jackson argues that he received ineffective assistance of counsel at his trial. I disagree, and I find that the state court was not unreasonable in rejecting this claim. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a convicted defendant challenging the constitutional adequacy of his counsel's assistance "must show that counsel's performance was

deficient" and "that the deficient performance prejudiced the defense."  To determine whether

performance was constitutionally deficient, the court must judge "whether, in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance."  *Id.* at 690.  Such acts must "[fall] below an objective standard of

reasonableness" set by "prevailing professional norms."  *Id.* at 688.  As for the prejudice

requirement, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

694.  A challenge to performance at trial presents "the question . . . whether there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting

guilt."  *Id.* at 695.

       The bulk of Jackson's briefed ineffectiveness arguments concern the admission of

the 911 tape containing Lloyd's hearsay statements.  Jackson claims, for instance, that his trial

counsel was ineffective because he did not investigate the authenticity of the tape, challenge the

prosecution's failure to lay a foundation for it, interview certain witnesses who could have

impeached the reliability of the tape, or impeach the 911 call on the ground that it was recorded

(at 9:54 a.m.) four minutes before the time of injury indicated on Harrison's death certificate (an

astonishingly precise 9:58 a.m.).[11]

       These arguments are unavailing for two reasons.  First, Jackson's counsel's

theory that the 911 tape was fabricated is frivolous, and reckless as well.  The argument goes as

---

[11]     Jackson points out that this death certificate has a different time of injury than its "Hour of Death or Found Dead" [*sic*], which is listed as 11:40 a.m., which itself is an hour earlier than the time of death indicated by certain hospital records in the trial record (12:40 p.m.).  Jackson does not explain what turns on these inconsistencies, however, (assuming they are inconsistencies) other than the reliability of the 911 tape.  *See* Pet'r Br. 20 ("There is no question that the time-line, which is a crucial element to [*sic*] the petitioner's claim that Lloyd did not witness the Harrison shooting, was altered to suit the People's case.").

follows:  If the 911 tape were authentic, then the prosecution of Jackson would have commenced

shortly after the murder of Richard Harrison (even though Lloyd was uncooperative, thanks to

Jackson himself).  But the prosecution did not happen until Sylver cooperated years later.  So the

government, recognizing that Sylver was an impeachable witness, fabricated a 911 tape that

"should have resulted in the immediate arrest of Mr. Jackson."  Tr. June 15, 2007 at 7-10.  That

argument simply does not constitute a good-faith basis for the belated claim that law

enforcement officers committed the crime of fabricating false evidence.  Second, Jackson cannot

show the omissions by his trial counsel could have prejudiced him.  As I have repeatedly

mentioned, there was plenty of independent evidence from which the jury could have convicted

Jackson of the Richard Harrison murder, including Lloyd's identification of Jackson (introduced

through David Harrison) and Jackson's false alibi.  The state court would not have been

reasonable in so concluding.[12]

> Jackson also claims his counsel was ineffective for failing to impeach the

testimony of Sylver with certain telephone records.  In this regard, he says that Sylver "perjured

himself" on the stand by claiming that Jackson had confessed his guilt of the Richard Harrison

murder over the telephone while Sylver was in prison.  Pet'r Br. 21.  "Had [trial counsel]

obtained the phone records of the New York City Department of Correctional Services, which

were readily available," he argues, "he could have easily disproved that Sylver's contention

[*sic*]."  *Id.*  But Jackson does not mention what the telephone records would prove.  Similarly,

Jackson argues trial counsel failed to investigate certain telephone records to prove that Sylver

and Jackson were in a business meeting "until 8:30 a.m. - 8:45 a.m. on the day of Hick's [*sic*]

---

[12]  Jackson's claim that his appellate counsel was ineffective for failure to raise a Confrontation
Clause challenge to the admission of the 911 tape is without merit.  *See Davis*, 126 S. Ct. at 2276.

murder," *id.* at 22, but Jackson does not mention why that is significant.  Without any attempt at

a demonstration that the telephone records in question were material to Jackson's case, I cannot

conclude counsel's failure to obtain them was deficient performance, because Jackson does not

rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance."  *Strickland*, 466 U.S. at 689.[13]

CONCLUSION

For the reasons set forth, the petition is denied.[14]  As Jackson has not

demonstrated the likelihood of a constitutional violation, no certificate of appealability shall

issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
August 7, 2007

---

[13]     Jackson also argues that counsel's assistance was ineffective because he failed to move for a
directed verdict on the ground that the testimony of a medical examiner about the cause of Harrison's death "simply
summarized the findings of [another examiner's] conclusory autopsy report."  Pet'r Br. 24.  This frivolous argument
challenges the failure to object to the examiner's testimony on hearsay grounds, which was not deficient
performance.  Declining to object to the introduction of technically inadmissible yet inevitably remediable evidence
is a common tactic.  No trial lawyer wishes to earn the enmity of a jury that believes she is wasting its time with
pointless objections.  Jackson does not rescue the argument by framing his challenge as one to the failure to move
for directed verdict, because once the examiner's testimony was in evidence, there was no insufficiency on which to
move.

[14]     The most belated of Jackson's potpourri of challenges to his conviction rests on a recent affidavit
of Henry Tyler.  Since there was evidence at trial that Tyler was used by Jackson to silence Lloyd, it is no surprise
that Tyler's eleventh-hour submission contradicts Lloyd's statements on the 911 call.  The Tyler-based claim reeks
of desperation, and there appears to be no good reason for the many years of delay in obtaining the statement.  In any
event, the claim has not been exhausted in the state courts and was not asserted in the petition before me.  I see no
reason to permit Jackson to amend his petition to raise the claim.